**STATE of Missouri,
Plaintiff/Respondent,**

v.

**James McLEMORE,
Defendant/Appellant.**

No. 55463.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 26, 1989.

Mary C. McWilliams, D. Warren Hoff, Jr., St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Double jeopardy is the determinative issue in this case.  Defendant, James McLemore, was convicted of violating the City of St. Louis' Ordinance No. 15.130.050, which prohibits a person from carrying "on or about his person any firearm ... beyond the property limits of his residence or business premises in the city" except under specified conditions.  Subsequently, on the same facts, defendant was convicted of carrying a concealed weapon in violation of our state statute § 571.030.1(1) RSMo 1986. Defendant contends his conviction on the state charge following his conviction on the city charge constituted double jeopardy. We agree, and we reverse the conviction and sentence on the state charge.

Only a few facts are relevant to the double jeopardy issue. One morning in December, 1987, about 2:50 a.m., police officer Linda Hough responded to a report that a black male was seen flourishing a weapon on Cabanne Ave. in the City of St. Louis. Near the scene of the reported flourishing, Officer Hough saw defendant walking with another male. She stopped both men, and, when she began patting down defendant's companion, defendant took off running. Officer Hough pursued defendant and saw him take two objects from a paper bag he was carrying and throw them into a basement stairwell. She stopped her pursuit and recovered two revolvers from the stairwell: a loaded .22 caliber revolver and an unloaded .38 caliber revolver. Defendant was apprehended, issued a city summons for "carrying [a revolver] loaded in an unlock[ed] container" and, then, charged by information with and convicted of violating City Ordinance No. 15.130.050.[1]

Subsequently, in the present case, defendant was charged with carrying "a fully loaded .22 caliber revolver" concealed upon his person in violation of § 571.030.1(1) RSMo 1986. Prior to trial, defendant's motion to dismiss this charge on the grounds of double jeopardy was heard on defense counsel's uncontested assertions that "this is the same case [as the city case], the same police officer, the same day, the same evidence, the same guns [sic] that is being contested here, it's the same body that is trying to convict [defendant]...." Defendant's motion was denied. Defendant again was convicted, and this appeal followed.

■ Two sources of double jeopardy protection against multiple prosecutions and convictions for the same conduct are relevant to this case: the Fifth Amendment to the U.S. Constitution and Missouri's multiple offense limitation statute, § 556.041(1) RSMo 1986.[2] The Fifth Amendment, incorporated in and made applicable to the states by the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969), provides that no one shall be "subject for the same offense to be twice put in jeopardy of life or limb." Offenses are the same for purposes of double jeopardy analysis unless *each* "requires proof of an additional fact which the other does not." *Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). The Fifth Amendment therefore precludes prosecution for a greater offense following conviction for a lesser included offense, *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187, 196 (1977), at least where successful prosecution of the greater offense necessarily depends upon reestablishment of all the facts constituting the included crime. *Illinois v. Vitale*, 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228, 238 (1980).

■ Similarly, Missouri's multiple offense limitation statute, § 556.041(1), prohibits multiple convictions for offenses arising from the same conduct when one offense is "included in the other". § 556.046.1(1) defines an included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged."

Application of double jeopardy analysis, under either the Fifth Amendment or the multiple offense limitation statute, thus requires determination of the facts necessary to prove each offense involved. The analysis focuses upon the statutory elements of each offense, rather than upon the evidence actually adduced at trial. *Iannelli v. U.S.*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616, 627 n. 17 (1975); *State v. Bextermueller*, 643 S.W.2d 292, 295 (Mo.App.1982). Usually, the analysis is uncomplicated. The elements of each offense in issue are gleaned from statutory

---

1. The summons and information were not offered into evidence during trial of the present case. Defendant filed these documents as Exhibits in this Court. The state did not object to this filing.

2. As the defendant concedes, the double jeopardy clause in the Missouri Constitution, Art. 1, § 19, prohibits subsequent prosecution only after a verdict of innocence.

or common law definitions and, then, simply compared.

■ In the present case, despite slight differences in wording, the language of the city ordinance is functionally equivalent to the language of the state statute in all material respects, except for the statute's distinct requirement that the weapon be concealed. The ordinance prohibits any person from carrying:

"on or about his person any firearm ... beyond the property limits of his residence or business premises in the city unless the firearm ... is unloaded and secured in a locked container or in a case, or is sealed in its original delivery carton after sale by a bona fide dealer."

Subsection (1) of § 571.030.1 RSMo 1986 prohibits any person from carrying

"concealed upon or about his person ... a firearm...."

.    .    .    .    .

[However, Subsection (1) does] "not apply when the actor is ... transporting such weapons in a nonfunctioning state or in an unloaded state when ammunition is not readily accessible or when such weapons are not readily accessible[;]" [nor does Subsection (1) apply] "... when the actor ...... is in his dwelling unit or upon business premises over which the actor has possession, authority or control...." § 571.030.3 RSMo 1986.

The ordinance and the statute differ only in the level of generality with which they describe the conduct prohibited. The statute proscribes a broader range of weapons—knives, firearms, blackjacks, or any other weapons readily capable of lethal use—than the ordinance, which proscribes only firearms, pistols, revolvers, shotguns or rifles. The statute uses the general term "not readily accessible," as opposed to the more specific language in the ordinance, "secured in a locked container or in a case ... or ... sealed in its original delivery carton after sale by a bona fide dealer." A weapon secured in a locked container or case or sealed in its original delivery carton would presumably be considered not readily accessible within the meaning of the statute. Thus, the conduct proscribed by the ordinance—carrying a loaded or unsecured, unsealed weapon on the person beyond residential or business premises—is also proscribed by the statute, if the weapon is concealed.

This functional equivalency analysis, however, may not square with the double jeopardy analysis, which typically requires a comparison of the elements of each offense. Both the ordinance and the statute define their respective offenses with a proviso or an excepting clause. Thus, carrying a firearm on or about the person beyond the premises of home or business is proscribed conduct under the ordinance, *"unless"* the firearm is both unloaded and secured in a locked or sealed container; and carrying a concealed firearm weapon on or about the person is proscribed conduct under the statute, but the proscription *"does not apply"* if the weapon is in a "non-functioning state", or is unloaded and the weapon or ammunition is not readily accessible, or the actor is in his "dwelling unit" or on his business premises.

There is no certain principle, however, to use to determine when a qualification of the scope of the proscribed conduct should be viewed as a matter of excuse or justification as distinguished from a basic element of the crime. Courts have continuously wrestled with this problem and consistently have been pinned to the mat.

In Missouri, for submissibility purposes, we generally rely on the positioning of the excepting clause or proviso to determine whether it defines an element of the crime. If the exception is positioned in an independent clause or a separate section of the defining statute, it "usually" is held not to be an element of the charged offense. *Williams v. State*, 437 S.W.2d 82, 86 (Mo. 1969). Conversely, the negation of an exception positioned in a dependent clause is held to be an element. *Id.* We have also said the negation of an exception is an element of the offense where the negation is so essential to the accurate description of the offense that without the negation no offense is charged, *State v. Bridges*, 412 S.W.2d 455, 456 (Mo.1967), or, conversely,

that negation is not an element if the offense is "capable of an exact definition, without reference to the exception of proviso." *State v. Bockstruck,* 136 Mo. 335, 38 S.W. 317, 320 (1896).

Arguably, none of these principles are meaningful for double jeopardy purposes. Reliance on the positioning of the exception or proviso to determine whether it defines an element of the crime gives preeminence to what may be an accident of drafting, rather than an analysis of the exception or proviso and its relevance to the culpability of the accused. On the other hand, to say the determination rests on whether the negation of the exception or proviso is essential to the definition of the crime begs the question. This is nothing more than saying the negation is an element because it is an element.

But we need not vary these principles in our double jeopardy analysis here. Basically, the Double Jeopardy Clause bars double prosecution for the same conduct. *U.S. v. Ewell,* 383 U.S. 116, 124, 86 S.Ct. 773, 778, 15 L.Ed.2d 627, 633 (1966). We simply need to keep focused on the conduct proscribed.

Conviction under the ordinance requires negation that the weapon involved was both unloaded and secured in a locked container or in its original delivery carton, i.e., the ordinance requires proof the weapon was either loaded or unsecured. The exception for unloaded and secured firearms, situated in the dependent "unless" clause, qualifies the conduct prohibited by the ordinance. Without negation of this exception, allegation or proof of the elements which appear in the ordinance's principal clause—carrying a firearm on the person beyond residential or business premises—does not charge or prove a violation of the ordinance.

On the other hand, the exceptions contained in subsection 3 of the statute are considered to be defenses. The state can make a submissible case on a concealed weapons charge without negating any of the exceptions: "a prima facie case of carrying a concealed weapon is made upon the state's evidence ... which demonstrates (a) the carrying of a dangerous or deadly weapon, (b) concealed on or about the person, (c) along with an intent to so conceal." *State v. Simmons,* 716 S.W.2d 427, 430 (Mo.App.1986). The subsection 3 exceptions are said to be "special negative defenses." *State v. Henderson,* 660 S.W.2d 373, 378 (Mo.App.1983) (construing predecessor statute's exception for law enforcement officers as a special negative defense. § 571.115 RSMo 1978). The state bears the burden of disproving special negative defenses beyond a reasonable doubt, if, but only if, the defendant produces evidence interjecting such a defense. MAI–CR 3d 304.11E.[3] Thus, several "elements" of the offense defined by the ordinance are only "special negative defenses" to the offense defined by the statute.

Even though several "elements" of the ordinance are only "special negative defenses" under the statute, labelling the offenses defined by the ordinance and statute as different crimes for double jeopardy purposes would require a hypertechnical process bordering on sophistry. For example, it was possible for the state to prove the concealed weapon's charge here without establishing several "elements" necessary for conviction under the ordinance. Unlike the city prosecuting under the ordinance, the state did not have to prove that defendant was beyond residential or business premises or that the gun carried was either loaded or accessible, since these facts apparently were not in dispute. Therefore, with respect to the prosecution of this defendant, the city ordinance and the state statute each required proof of a fact not necessary for conviction under the other. Proof that defendant was beyond his business or residential premises and that his gun was either loaded or accessible

---

**3.** The drafters of MAI–CR3d do not expressly characterize the exceptions of § 571.030.3 RSMo 1986 as "special negative defense." The form instruction for the charge of carrying a concealed weapon, however, states the state must negative these exceptions beyond a reasonable doubt whenever there "is any evidence of the exceptions." MAI–CR3d 331.20 Notes on Use 4.

was necessary to establish a violation of the ordinance, but not necessary in the state case. Proof that the weapon was concealed was necessary for the state prosecution, but not for the city case.

However, neither law nor logic warrants such a mechanical application of double jeopardy principles. In the present case, *both* the ordinance and the statute always require the existence of all the facts constituting the conduct proscribed by the ordinance. Conviction under both the ordinance and the statute requires proof the defendant carried a firearm on or about his person. Conversely, there is no violation of either the ordinance or the statute if the defendant was on his business or residential premises or was carrying an unloaded and inaccessible weapon. Moreover, the state may obtain a concealed weapon's conviction *without* proving (1) defendant was beyond his business or residential premises, (2) carrying a weapon which was either loaded or accessible, *only* if there is no dispute as to these facts. *See, Henderson, supra,* 660 S.W.2d at 378. These facts, however, are the "elements" of the city offense. In effect, then, in prosecuting the state offense, the state bears the burden of proving beyond a reasonable doubt all the "elements" of the city offense, whenever these "elements" are in dispute. To us, this makes the state and city offense the same for double jeopardy purposes.

Judgment reversed.

SMITH, P.J., and CARL R. GAERTNER, J., concur.