IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 STATE OF MISSOURI, )
 )
 Respondent, )
 WD83502
 v. )
 )
 OPINION FILED:
 )
 May 4, 2021
 KHAMIS D. PITIYA, )
 )
 Appellant. )

 Appeal from the Circuit Court of Linn County, Missouri
 The Honorable Terry A. Tschannen, Judge

 Before Division Two: Mark D. Pfeiffer, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 Khamis Pitiya appeals, following a bench trial, his convictions of two counts of felony

resisting arrest, § 575.150,1 and one count of armed criminal action, § 571.015, for which he was

sentenced to concurrent terms of three years’ imprisonment on each count. Pitiya raises two points

on appeal. In his first point, he argues that his two convictions for resisting arrest are in violation

of his right to be free from double jeopardy insofar as his resistance constituted a continuous course

of conduct for which he could be punished only once. In his second point, Pitiya argues that the

evidence was insufficient to support the second count of resisting arrest and that both that count

 1
 All statutory citations are to the Revised Statutes of Missouri, as updated through the 2018 Supplement.
and its associated count of armed criminal action should be reversed. Finding merit in Pitiya’s

second claim, we affirm in part, reverse in part, and remand.

 Background

 On May 8, 2019, Officer Thomas Bunnell of the Brookfield City Police responded to a call

reporting a vehicle weaving in and out of traffic near Highway TT on eastbound US-36. When he

first noticed Pitiya’s vehicle, it was traveling at 83 miles per hour in a 65 miles-per-hour zone.

Officer Bunnell watched Pitiya’s vehicle driving on the shoulder at variable speeds. He pulled

alongside Pitiya’s vehicle, made eye contact with Pitiya, and motioned for Pitiya to pull over. At

that time, Pitiya’s speed varied between 45 and 60 miles per hour. Instead of pulling over, Pitiya

twice swerved off the shoulder into the driving lane where Officer Bunnell’s vehicle was driving,

forcing Officer Bunnell to slow down and change lanes to avoid a collision. Pitiya then sped up,

nearly colliding with another law enforcement vehicle in front of him. Pitiya continued to pick up

speed, all the while swerving between lanes and the shoulder, and Officer Bunnell followed a mile

or two behind, going in excess of 100 miles per hour to keep up with Pitiya.

 Officers laid spike strips at four different locations in an effort to stop Pitiya, but it was not

until he hit the fourth set that his vehicle was disabled. When officers finally apprehended Pitiya,

he smelled heavily of intoxicants and had bloodshot eyes and slurred speech. On the driver-side

floorboard of Pitiya’s vehicle was an open alcohol bottle, and in the back-passenger seat, were

open beer cans and three whiskey bottles.

 The State charged Pitiya with seven counts of resisting arrest, two counts of armed criminal

action, and one count of driving with an excessive blood alcohol content. Before trial, Pitiya

moved to dismiss all but one count of resisting arrest (specifically, Count I), arguing that

conviction of more than one count violated his right to be free from double jeopardy insofar as all

 2
of the resisting arrest charges stemmed from a continuing course of conduct.2 The trial court

dismissed Counts VI, VII, VIII (three counts of resisting arrest) and IX (one count of armed

criminal action) pursuant to Pitiya’s motion, but took Count II under advisement. The trial court

later dismissed Counts IV and V (resisting arrest and armed criminal action), on the ground that

the resisting arrest charge violated Pitiya’s right to be free from double jeopardy; and, because the

armed criminal action charge was based on the dismissed resisting arrest charge, it lacked

sufficient evidentiary support. The trial court also sustained Pitiya’s motion for judgment of

acquittal on Count X (excessive BAC) because the State failed to present evidence of Pitiya’s

blood alcohol content.

 The trial court convicted Pitiya of Count I (the resisting arrest charge to which Pitiya

conceded guilt), Count II (resisting arrest), and Count III (armed criminal action based on

Count II), finding that Pitiya committed two distinct acts of resisting arrest as alleged in Counts I

and II so that convicting him of both did not violate his right to be free from double jeopardy. The

trial court sentenced Pitiya to three years’ imprisonment on each count, with all sentences to run

concurrently. Pitiya appeals.

 Analysis

 Pitiya raises two claims. First, he argues that conviction of both Counts I and II violated

his right to be free from double jeopardy. Second, he argues that the evidence was insufficient to

support his conviction on Count II and, therefore, both Counts II and III (which was based upon

Count II) must be reversed.

 2
 At trial, Pitiya conceded guilt on Count I.

 3
 I. Pitiya’s convictions for two counts of resisting arrest did not constitute double
 jeopardy.

 In his first point, Pitiya argues that the car chase he led law enforcement on was one

continuing course of conduct and that convicting him of more than one count of resisting arrest

based upon this conduct violated his right to be free from double jeopardy. We disagree.

 “The determination of whether the protections against double jeopardy apply is a question

of law which this court reviews de novo.” State v. Mullenix, 73 S.W.3d 32, 34 (Mo. App. W.D.

2002). We defer “to the trial court’s factual findings and credibility determinations.” Id. (quoting

State v. Werner, 9 S.W.3d 590, 595 (Mo. banc 2000)).

 The federal double jeopardy clause “protects defendants not only from successive

prosecutions for the same offense after either an acquittal or a conviction, but also from multiple

punishments for the same offense.” State v. Liberty, 370 S.W.3d 537, 546 (Mo. banc 2012)

(quoting State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992)). “[W]hen a defendant’s conduct

is continuous,” we focus “on the conduct the legislature intended to proscribe under the statute” to

determine if multiple punishments are permissible.3 Id. “Double jeopardy analysis regarding

multiple punishments is, therefore, limited to determining whether cumulative punishments were

intended by the legislature.” Id. at 546-47 (quoting McTush, 827 S.W.2d at 186). “To determine

whether the legislature intended multiple punishments, a court looks first to the ‘unit of

prosecution’ allowed by the statutes under which the defendant was charged.” Id. at 547 (quoting

State v. Sanchez, 186 S.W.3d 260, 267 (Mo. banc 2006)).

 3
 Section 556.041(4) provides:

 When the same conduct of a person may establish the commission of more than one offense he or
 she may be prosecuted for each such offense. Such person may not, however, be convicted of more
 than one offense if . . . [t]he offense is defined as a continuing course of conduct and the person’s
 course of conduct was uninterrupted, unless the law provides that specific periods of such conduct
 constitute separate offenses.

 4
 Section 575.150.1(1) indicates that

 [a] person commits the offense of resisting or interfering with arrest . . . if he or she
 knows or reasonably should know that a law enforcement officer is . . . attempting
 to lawfully . . . stop an individual or vehicle, and for the purpose of preventing the
 officer from effecting the . . . stop or detention, he or she . . . [r]esists the . . . stop . . .
 by using or threatening the use of violence or physical force or by fleeing from such
 officer.

 Our courts have held that “the appropriate unit of prosecution for the crime of resisting

arrest is the substantive act of undertaking a resistance to the arrest.” Stuart v. State, 565 S.W.3d

766, 774 (Mo. App. E.D. 2019) (citing State v. Good, 851 S.W.2d 1 (Mo. App. S.D. 1992)). And,

because the statute provides two distinct acts that constitute resistance—(1) threatening the use of

violence or physical force and (2) fleeing the officer attempting the stop—a person who engages

in both acts may be charged with and convicted of multiple offenses.4

 Here, Pitiya was charged in Count I with resistance “by fleeing at high rates of speed,

specifically eastbound on US-36 at rates of speed between 105 and 120 miles per hour.” In

Count II, he was charged with resistance by “us[ing] physical force or interference by attempting

to hit Brookfield Police Officer Lt. T. Bunnell’s patrol vehicle multiple times as Lt. Bunnell

attempted to effect a stop of defendant’s vehicle on US-36 highway.” Each of these acts is a

distinct method of resisting under § 575.150.1(1). Additionally, the evidence indicated that the

acts occurred at distinct times: when Pitiya twice attempted to hit Lt. Bunnell’s vehicle by moving

from the shoulder into Lt. Bunnell’s lane of traffic, as charged in Count II, Pitiya was traveling

 4
 Missouri courts have repeatedly found separate offenses “where the conduct is dissimilar or the actions are
separated in time. Where the counts are based on different acts or a separate mens rea is formed for each act, crimes
are different in nature.” State v. Barber, 37 S.W.3d 400, 404 (Mo. App. E.D. 2001) (rejecting a double jeopardy
challenge to multiple convictions of unlawful use of a weapon based on distinct acts of exhibiting the weapon); see
also State v. Tyler, 196 S.W.3d 638, 641 (Mo. App. W.D. 2006) (rejecting a double jeopardy challenge to multiple
assault convictions where each conviction “involved a different method of assault”); State v. Harris, 243 S.W.3d 508,
512 (Mo. App. W.D. 2008) (distinguishing State v. Collins, 154 S.W.3d 486 (Mo. App. W.D. 2005) by noting that the
acts in Collins, where no double jeopardy violation occurred, involved “different forms of offensive contact,” whereas
the conduct in Harris was all the same).

 5
slower than 60 miles per hour and increased his speed to over 105 miles per hour, as charged in

Count I, only after his attempt to hit Lt. Bunnell’s vehicle. Because each of Pitiya’s separate acts

of resistance is a separate unit of prosecution, Pitiya’s right to be free from double jeopardy was

not violated by his conviction of both counts.

 Point I is denied.

 II. The evidence was insufficient to support Pitiya’s conviction for felony resisting
 arrest on Count II.

 In his second point on appeal, Pitiya argues that the evidence was insufficient to support

his conviction for felony resisting arrest in Count II and that, by extension, it was also insufficient

to support his conviction for armed criminal action in Count III, which was based on the resistance

charged in Count II. We agree in part.

 “When reviewing [a challenge to] the sufficiency of evidence supporting a criminal

conviction, [we] give[] great deference to the trier of fact.” State v. Kelliker, 605 S.W.3d 440, 444

(Mo. App. W.D. 2020) (quoting State v. Oliver, 293 S.W.3d 437, 444 (Mo. banc 2009)). Our

review “is limited to a determination of whether there is sufficient evidence from which a

reasonable juror might have found the defendant guilty beyond a reasonable doubt.” Id. (quoting

Oliver, 293 S.W.3d at 444). “In applying this standard, the Court accepts as true all of the evidence

favorable to the state, including all favorable inferences drawn from the evidence and disregards

all evidence and inferences to the contrary.” Id. (quoting Oliver, 293 S.W.3d at 444).

 As mentioned above, when the person “knows or reasonably should know” that an officer

is attempting a stop, § 575.150.1(1) proscribes resisting a stop by either: (1) “using or threatening

the use of violence or physical force”; or (2) “fleeing from such officer.” Resisting arrest by any

means is a class A misdemeanor unless the underlying arrest is “for a . . . [f]elony; [a w]arrant

issued for failure to appear on a felony case; or [a w]arrant issued for a probation violation on a

 6
felony case.” § 575.150.5. Under those circumstances, resisting arrest is a class E felony. Id.

Resisting arrest also becomes a class E felony where the resistance is accomplished by flight and

“the person fleeing creates a substantial risk of serious physical injury or death to any person.” Id.

 Here, in Count II, Pitiya was charged with felony resisting arrest insofar as he “used

physical force or interference by attempting to hit Brookfield Police Officer Lt. T. Bunnell’s patrol

vehicle multiple times as Lt. Bunnell attempted to effect a stop of defendant’s vehicle on US-36

highway.” Count II of the second amended information did not charge Pitiya with resisting the

stop by fleeing, yet the charging document alleged that he “creat[ed] a substantial risk of serious

physical injury or death to any person.” (Emphasis added.) Count II charged resistance by the

use of physical force, but it elevated the charge to a felony with the allegation that Pitiya created a

substantial risk of serious physical injury or death to any person. Creating a substantial risk of

serious physical injury or death, however, elevates a charge from a misdemeanor to a felony only

where the method of resistance is flight. Under the plain language of the statute, where the

resistance alleged involves the use or threatened use of physical force or violence, the charge may

be elevated to a felony only if the underlying arrest is “for a . . . [f]elony; [a w]arrant for failure to

appear on a felony case; or [a w]arrant for a probation violation on a felony case.”

 Pitiya argues that the evidence was insufficient to support a finding that his use of force

created a substantial risk of serious physical injury or death. But this argument misses the point.

The State was not required to prove that Pitiya’s use of force created a substantial risk of serious

physical injury or death under Count II, because the method of resistance alleged in the charging

document was not flight. But, to maintain a felony conviction, the State needed to prove that the

underlying arrest or stop was “for a . . . [f]elony; [a w]arrant for failure to appear on a felony case;

or [a w]arrant for a probation violation on a felony case.” And the State failed to either allege or

 7
prove the nature of the underlying arrest or stop. Accordingly, Pitiya’s conviction for a class E

felony cannot stand.

 Pitiya does not challenge the sufficiency of the evidence to support any of the remaining

elements of resisting arrest as charged in Count II and urges us to “enter a misdemeanor conviction

for resisting a lawful stop” as a result of the State’s alleged failure to prove the substantial risk of

serious physical injury or death. Though we disagree with Pitiya’s rationale, we agree that his

conviction should be reduced to a misdemeanor on Count II for the reasons stated above. See State

v. Luster, 544 S.W.3d 263, 266 (Mo. App. E.D. 2017) (“Where a conviction is reversed on appeal

for a reason that would not affect a lesser-included offense, the appellate court may remand the

case for entry of a conviction on the lesser-included offense.”). Therefore, we reverse his

conviction on Count II and remand for the trial court to enter a conviction for misdemeanor

resisting arrest and resentence Pitiya accordingly.

 Finally, because Count III (armed criminal action) was predicated on the felonious nature

of Count II,5 and Count II—as proven—was only a misdemeanor, Count III must be reversed as

well.

 Point II is granted.

 Conclusion

 Pitiya’s two convictions for resisting arrest, based on two different means of resistance

committed at distinct times, do not constitute double jeopardy. His conviction in Count II,

however, should have been for a misdemeanor, rather than a felony. We reverse Pitiya’s

conviction on Count II and remand to the trial court with directions to both enter conviction on

 5
 “Any person who commits any felony under the laws of this state by, with, or through the use, assistance,
or aid of a dangerous instrument or deadly weapon is also guilty of the offense of armed criminal action.” § 571.015.1
(emphasis added).

 8
Count II for misdemeanor resisting arrest and resentence Pitiya accordingly. In light of our

decision regarding Count II, Pitiya’s conviction in Count III for armed criminal action is reversed

and vacated.

 Karen King Mitchell, Judge

Mark D. Pfeiffer, Presiding Judge, and Alok Ahuja, Judge, concur.

 9